Filed 11/20/20  P. v. Oats CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D076792 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD282660) |
| SINCLAIRE OATS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Polly H. Shamoon, Judge.  Affirmed in part; reversed in part; remanded with directions.

Kenneth J. Vandevelde, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric Swenson and Allison V. Acosta, Deputy Attorneys General, for Plaintiff and Respondent.

Sinclaire Oats was charged with attending an arranged illicit meeting with a minor (Pen. Code,[1] § 288.4, subd. (b); count 1), contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a); count 2), and sending harmful matter to a minor with the intent to seduce the minor (§ 288.2, subd. (a); count 3). Oats pled guilty to count 3 in exchange for dismissal of counts 1 and 2.

The court suspended imposition of sentence and granted Oats formal probation for four years.

Oats appeals, challenging certain probation conditions. He asserts that the no contact with female minors provision contained in probation conditions 10(k), 10(i), and an additional condition under probation condition 14 is unconstitutional and unauthorized to the extent it prohibits him from having contact with his children. Oats argues that probation condition 7(a), which requires him to take psychotropic medications if prescribed or ordered by a physician is vague and overbroad. He further maintains that probation condition 10(p), prohibiting possession of pornographic material, is vague and overbroad. Oats also claims probation conditions 6(r) and 7(b), which require him to participate in any assessment program chosen by his probation officer as well as any treatment, counseling, or other conduct suggested by the assessments, are an unconstitutional delegation of judicial power. Additionally, he contends that probation condition 6(k), requiring him to notify the probation officer of any contacts with law enforcement, is vague. Finally, Oats insists that the order granting formal probation should be corrected to reflect the fact that probation conditions 15, 16, and 17 were stayed pending a successful completion of probation.

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

2

We agree with Oats that probation condition 7(a) is both vague and overbroad. Also, as the government concedes, probation condition 10(p) is vague and needs further clarification by the superior court. Because we are remanding this matter to address these two probation conditions, we additionally will instruct the superior court to make sure the order granting formal probation accurately states what conditions were stayed pending successfully completion of probation. However, as to the remainder of Oats's claims, we find them forfeited or without merit.

FACTUAL AND PROCEDURAL BACKGROUND

Oats, a 34-year-old man with a wife and nine children under the age of 15, had a profile on an application called MeetMe.[2] In March 2019, he exchanged numerous messages with a detective who was posing as a 13-year-old girl named "Ash." Although "Ash's" profile stated that she was 18 years old, she told Oats that she was 13 years old, and Oats responded, "Ok, Wow, I'm super Lowkey [sic] with you," and, "Can't let anyone know about you." In other messages, Oats asked "Ash" when she would "be ready to get some king dick in [her] life," told her she could perform oral sex on him, and sent her a photo of his erect penis.

On March 13, Oats arranged to meet with "Ash" to have sex in his car, after he picked up his children from school and dropped them off at home. While he was on his way to the arranged meeting, Oats sent "Ash" a message telling her to remove her panties so he could "start right away to eat [her] sweet pussy and then have sex." When Oats exited his car at the meeting point, the police arrested him and discovered a box of condoms in his possession.

---

[2] Because Oats pled guilty, we take the background facts from the probation report.

Oats admitted sending the picture of his penis as well as using several online dating apps. When the police searched Oats's phone, they found a message in which Oats appeared to solicit a sex act and other messages with an unknown person involving payment for images. Officers also found photos on his phone depicting females "who appeared to be under age or considered 'age difficult.'"

Oats was charged with attending an arranged illicit meeting with a minor (§ 288.4, subd. (b); count 1), contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a); count 2), and sending harmful matter to a minor with the intent to seduce the minor (§ 288.2, subd. (a); count 3). Oats pled guilty to count 3 in exchange for dismissal of counts 1 and 2.

At this sentencing hearing, the superior court began by asking whether this case had been referred to Child Protective Services (CPS). The court explained, "[T]his [case] deals with a very serious offense of an arranged meeting to have sex with a 13-year-old girl. [Oats] has three other daughters in the house, all minors around that age, at least one of them[,] with another baby on the way. And CPS looks like [it] has done nothing to look into that. And I'm not sure if his wife is protecting those children. . . . So that's a concern to the Court."

The court then imposed "an absolute no contact with any minor female under the age of 18" order as a condition of probation. The court explained that the condition meant "no contact with any minor females under the age of 18 until further court order, which means he can't go live at home with his

4

daughters under the age of 18 until after this Court gives him permission, which will be after he attends a significant amount of sex offender therapy."[3]

Oats's counsel objected to imposition of the no contact condition (probation condition 14), claiming that it was overbroad and that there was no evidence that Oats had behaved inappropriately with his own children. Defense counsel pointed out that the "detectives . . . had plenty of opportunity to interview [Oats's] family. And [probation condition 14] is basically going to force [Oats] into a potentially homeless situation . . . ." In response, the superior court "clarif[ied] for the record . . . the facts that ha[d] been presented to" the court. To this end, the court explained:

> "The defendant met with the victim on social media. Although it was an undercover agent, to him it was a 13-year-old girl named Ash. He contacted her, and they had correspondence on numerous occasions. She told him that she was 13 years old. He said he wants to be low key about that and not tell anybody.
>
> "His next conversation, including conversations about sex, specifically asking, 'When are you going to be ready for some king dick in your life,' specifically referring to sexual acts.
>
> "He went on to specifically correspond with this seemingly 13-year-old girl about how she can perform oral sex on him, how they can have sex in a regular way, and how they would meet to have sex. And in fact, he says to her, 'I have to pick up my kids from school and drop them

---

[3] The court stated that probation condition "14 will also include no contact with any minor females under the age of 18 until further court order . . . ." The court's statement in this regard is reflected in "Attachment 1" to the order granting formal probation, which provides, "No Contact with any female minors under the age of 18." For convenience and consistency with the briefs submitted by the parties, we will refer to this blanket no contact with female minors as probation condition 14.

off at home.  And once I take them home and stop at the store to get some condoms, then we can meet in the parking lot to have sex in my car.' "

After the court asked for clarification from the prosecutor, it continued to explain:

> "And after he dropped his kids off and after he went and bought a brand-new box of condoms, it was then that he parked his vehicle in the lot where he was to meet the victim, where he was then contacted by the undercover agent.

> "In investigating this case further, it was clear that there were pictures that he was sending of his genitalia to this seemingly 13-year-old girl about having sex with her.

> "Given that fact pattern and the fact that he has young girls at home—in fact, he claims he has nine children and his wife is pregnant and he specifically says 'I hope she has a girl,' this Court is very concerned about the welfare of those children.  But specifically because he was contacting this 13-year-old girl and dropped his kids off at home with the specific intent of dropping them off before he went to meet her to have sex is a concern for their safety.  And it's the nexus to the Court's order in this case.

> "So I will let your record stand as it will.  The Court is willing to consider modifying that order as soon as he has been in some sort of treatment or therapy for his conduct and potential modify that behavior.  But until he goes to treatment, sex offender therapy, there will be an absolute no contact order with him being with minors, at least females under the age of 18."

DISCUSSION

I

THE CHALLENGED PROBATION CONDITIONS

A. Oats's Contentions

Oats challenges a number of the conditions of probation that the court imposed, on various and multiple grounds. For example, he challenges conditions 10(k),[4] 10(i),[5] and 14 on the grounds they are constitutionally overbroad and violate *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*). He also contends the additional no contact condition under probation condition 14 is vague. Oats maintains probation conditions 7(a)[6] and 10(p)[7] are vague and overbroad. He challenges probation 6(k)[8] as vague. Oats additionally

---

[4]     Under probation condition 10(k), Oats may not "knowingly associate with minors, nor be in places where [he] know[s], or [his] P.O. or other law enforcement officer informs [him] that minors congregate, unless with an adult approved by P.O."

[5]     Per probation condition 10(i), Oats is prohibited from "knowingly contact[ing] females under 18 [years of] age except per family court orders regarding visitation and/or custody of children"

[6]     Probation condition 7(a) requires Oats to "[t]ake psychotropic medications if prescribed/ordered by doctor."

[7]     Probation condition 10(p) does not allow Oats to "knowingly possess any pornographic material, including computer files and disks, or knowingly be in places where [he] know[s], or a P.O. or other law enforcement officer informs [him], that pornographic materials are the main item for sale."

[8]     Probation condition 6(k) requires Oats to "[p]rovide true name, address, and date of birth if contacted by law enforcement" and to "[r]eport contact or arrest in writing to the P.O. within 7 days," including "the date of contact/arrest, charges, if any, and the name of the law enforcement agency."

contends probation conditions 6(r)[9] and 7(b)[10] constitute unconstitutional delegation of judicial power. Finally, Oats claims the probation order needs to accurately reflect that probation conditions 15, 16, and 17 were stayed pending successful completion of probation.

### B. Applicable Law

The only condition to which Oats raised an objection with the superior court was probation condition 14. He claimed that the condition was overbroad and that there was no evidence that he behaved inappropriately with his own children. He did not explicitly make a *Lent* reasonableness objection. Nor did he claim probation condition 14 was vague. He accepted without objection all of the other conditions of probation.

Challenges to probation conditions ordinarily must be raised in the trial court; if they are not, appellate review of those conditions will be deemed forfeited. (*People v. Welch* (1993) 5 Cal.4th 228, 234-235 (*Welch*) [extending the forfeiture rule to a claim that probation conditions are unreasonable, when the probationer fails to object on that ground in the trial court].) However, a defendant who did not object to a probation condition at sentencing may raise a challenge to that condition on appeal if the defendant's appellate claim "amount[s] to a 'facial challenge,' " i.e., a challenge that the "phrasing or language . . . is unconstitutionally vague and overbroad," and the determination whether the condition is constitutionally defective "does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts—a

---

[9] Probation condition 6(r) requires Oats to "[p]articipate and comply with any assessment program if directed by the P.O."

[10] Probation condition 7(b) requires Oats to "[p]articipate in treatment, therapy, counseling, or other course of conduct as suggested by validated assessment tests."

task that is well suited to the role of an appellate court." (*In re Sheena K.* (2007) 40 Cal.4th 875, 885 (*Sheena K.*).)

Because Oats did not object in the trial court to any of the probation conditions except for condition 14, he has forfeited any as-applied constitutional objections on appeal to the remaining conditions. We therefore address Oats's constitutional challenges to most of the conditions only to the extent that they " 'present "pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court." ' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 889.)

Further, as we discuss in part I.F, *post*, we decline to consider Oats's constitutional challenge to probation conditions 6(r) and 7(b) on the ground that they constitute impermissible delegations of judicial authority to a probation officer. Because Oats accepted these conditions without objection, he failed to provide the trial court with an opportunity to address his concerns. Although it could be argued that such challenges constitute facial constitutional challenges, and that we therefore could exercise our discretion to consider these claims (see *Sheena K.*, *supra*, 40 Cal.4th at p. 889), we decline to do so under the circumstances.

C.  Conditions 10(k), 10(i), and 14

Probation condition 10(k) requires that Oats "not knowingly associate with minors, nor be in places where you know, or your P.O. or other law enforcement informs you, that minors congregate, unless with an adult approved by the P.O."

Probation condition 10(i) prohibits Oats from "knowingly contact[ing] females under 18 [years of] age except per family court orders regarding visitation and/or custody of children."

9

Probation condition 14 prohibits Oats from having "[c]ontact with any female minors under the age of 18."

Here, Oats claims that these three conditions are overbroad and violate *Lent*, *supra*, 15 Cal.3d 481. However, Oats only objected to probation condition 14. As such, he has forfeited his challenge to conditions 10(k) and 10(i) unless he is making a facial challenge to either condition. (See *Welch*, *supra*, 5 Cal.4th at pp. 234-235; *Sheena K.*, *supra*, 40 Cal.4th at p. 885.)

Oats does not advance a facial challenge against probation conditions 10(k) and 10(i). Further, we do not see how he could articulate such a challenge. The language in both of those conditions is not overbroad on its face. Both conditions require knowledge and provide a mechanism for association (either by identifying an approved adult or allowing Oats to seek permission through a family court order). Moreover, Oats's attack on conditions 10(k) and 10(i) is clearly an as-applied challenge because he argues that those conditions prohibit him from seeing his minor, female children. However, those conditions apply to all female minors, not just his daughters. Therefore, we are satisfied that the constitutional challenge to probation conditions 10(i) and 10(k) has been forfeited as well as his challenge to those conditions under *Lent*. We thus turn to Oats's challenge of probation condition 14.

Here, Oats claims probation condition 14 infringes upon numerous constitutional rights, including the right to family privacy (see *Stanley v. Ill.* (1972) 405 U.S. 645, 651), the right to raise one's children (see *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1404), the right to marital privacy (see *People v. Frazier* (1967) 256 Cal.App.2d 630, 631), and the right to privacy in one's home (see *Tom v. City and County of San Francisco* (2004) 120 Cal.App.4th

10

674, 678-679). In addition, referring to rights beyond the home and family unit, Oats claims probation condition 14 violates his freedom of association (see *People v. Leon* (2010) 181 Cal.App.4th 943, 951; *People v. Bauer* (1989) 211 Cal.App.3d 937, 944 (*Bauer*)) and right to travel (see *Shapiro v. Thompson* (1969) 394 U.S. 618, 630). Yet, merely referring to constitutional rights and claiming they have been violated does not end our inquiry.

"If a probation condition serves to rehabilitate and protect public safety, the condition may 'impinge upon a constitutional right otherwise enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens." ' " (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1355.) A constitutionally overbroad condition is one that restricts a defendant's fundamental constitutional rights to a greater degree than necessary to achieve the condition's purpose. (*People v. Olguin* (2008) 45 Cal.4th 375, 384 (*Olguin*).) The overbreadth doctrine requires that probation conditions that may impinge on constitutional rights be tailored carefully and be reasonably related to the compelling state interest in reformation and rehabilitation. (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910.) " 'The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement.' [Citation.]" (*People v. Pirali* (2013) 217 Cal.App.4th 1341, 1346 (*Pirali*).)

The rights that Oats claims probation condition 14 violates are not absolute. For example, the restriction of the right of association is part of the nature of the criminal process. (*People v. Robinson* (1988) 199 Cal.App.3d 816, 818.) Probationers do not enjoy the absolute liberty to which other

11

citizens are entitled. (*Griffin v. Wis.* (1987) 483 U.S. 868, 874; see *People v. Mills* (1978) 81 Cal.App.3d 171, 181 [any person who commits sexual offense has waived any right to privacy].) In addition, California has a compelling interest in ensuring the safety of children, and this compelling interest may justify restrictions on a defendant's constitutional rights. (*Mills,* at p. 176; *People v. Delvalle* (1994) 26 Cal.App.4th 869, 879.)

In the instant action, the state's compelling interest in protecting children and rehabilitating Oats justified restrictions on Oats's constitutional rights. That the restrictions operated to prohibit Oats's contact with his daughters does not categorically make them unconstitutional. (See *People v. Jungers* (2005) 127 Cal.App.4th 698, 705 [upholding prohibition on defendant's ability to contact his wife in a domestic violence case, even though the restriction curtailed the defendant's rights of association and marital privacy]; *In re Peeler* (1968) 266 Cal.App.2d 483, 492-493 [court upheld probation condition prohibiting association with reputed drug users, including defendant's husband, effectively requiring her to live apart from him]; *People v. Celestine* (1992) 9 Cal.App.4th 1370, 1375 [probation condition prohibiting defendant from associating with other drug users, including defendant's girlfriend, was proper]; *People v. Wardlow* (1991) 227 Cal.App.3d 360, 367 (*Wardlow*) [court properly imposed probation condition of no contact with other child molesters, including defendant's brothers].)

The probation condition at issue here also was carefully tailored and reasonably related to Oats's reformation. The evidence before the superior court proved that Oats has a sexual interest in female minors. As the court explained, Oats pursued a sexual encounter with someone whom he believed to be a 13-year-old girl. Additionally, on Oats's phone, the police found photos depicting females who appeared to be minors or "age difficult."

12

Apparently, Oats had retrieved the subject photos from those individuals' social media and dating application profiles. Because of Oats's clearly demonstrated sexual interest in female minors, the superior court carefully tailored probation conditions, like condition 14, to help reform that behavior by prohibiting Oats from having any contact with female minors.

In doing so, the superior court recognized that this probation condition would impact Oats's ability to contact his minor daughters, and it made clear that it would consider modifying that condition as soon as it had reason to believe that Oats did not pose a threat to his daughters' safety. Until then, the court was concerned by the fact that there appeared to have been no CPS investigation and that it was unclear whether Oats's wife was in a position to protect their children. In light of these significant concerns—as well as the nature of Oats's offense and his willingness to pursue a 13-year-old for sex—the probation condition did not impinge on Oats's constitutional rights any more than necessary to protect female minors, including Oats's own children. In addition, the condition is clearly aimed at rehabilitating Oats. (See *Olguin*, *supra*, 45 Cal.4th at p. 384.)

Oats argues that probation condition 14 is overbroad because there was no evidence that he engaged in inappropriate conduct with his own daughters. Although Oats is correct that there was no evidence that he engaged in sexually inappropriate conduct with his daughters, the lack of that evidence is cold comfort on the record before us. As the superior court noted, Oats told someone, whom he believed to be a 13-year-old girl, that he needed to pick up his children and drop them off at home before he met the 13 year old for sex. The court further noted that Oats commented that he hoped his pregnant wife would give birth to a girl. And at least one of Oats's daughters is near in age to the girl with whom he was seeking to have a

sexual encounter. The lengths of which Oats labored to meet a supposed 13-year-old girl for sex as well as the cavalier manner in which he approached the safety of his own family underscores the superior court's concern that Oats was too dangerous to be left alone with any female minors, even his own daughters.

Further, despite the superior court's well-founded concern for Oats's minor daughters, the court remained willing to modify probation condition 14 if it was warranted. To this end, the court left open the possibility that Oats would be permitted to resume contact with his daughters after he received sex offender counseling. Additionally, we observe that probation condition 14 does not prohibit any contact with his male children.

Focusing on his right to raise his children, Oats asks this court to follow *United States v. Wolf Child* (9th Cir. 2012) 699 F.3d 1082 (*Wolf Child*) and determine that probation condition 14 is overbroad. Oats's reliance on *Wolf Child* is misplaced.[11] There, the 22-year-old defendant tried to have sex with the heavily-intoxicated 16-year-old victim at a party. (*Wolf Child*, at p. 1088.) As a condition of the defendant's probation, the district court prohibited him from being in the company of children under the age of 18, and the defendant challenged that condition as overbroad because it prohibited contact with his own daughters. (*Id.* at p. 1091.) The Ninth Circuit agreed. In reaching its conclusion, the Ninth Circuit expressed consternation that the district court gave little consideration or weight to the burden that the probation condition would place on the defendant's association and privacy rights. (*Id.* at pp. 1093-1095.) The Ninth Circuit

_____

[11]    We recognize that decisions of the federal district courts are not binding on this court. (*People v. Seaton* (2001) 26 Cal.4th 598, 653.) That said, we may still rely on them as persuasive authority. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1292.)

14

noted that the district court had not made any effort to examine that relationship and determine whether the defendant's conduct posed a risk to his children. (*Ibid*.) The court also explained that the nature of the defendant's offense (trying to have sex with someone who was only six years younger than him at a party) did not support the subject probation condition. (*Id*. at pp. 1097-1098.) Further, the court was clearly troubled by the fact that the defendant would be deprived "of his fundamental right to reside with and be in the company of his daughters during the 10 years of his supervised release that follows his seven year prison sentence." (*Id*. at p. 1098.)

Here, Oats attempted to have sex with someone who he believed to be only 13 years old, 21 years his junior, and closer in age to his own daughters. Rather than a single alcohol-induced act of sexual aggression, Oats developed a rapport with a minor using an electronic application, where he presumably believed he could maintain secrecy and privacy. The trial court thus was reasonably concerned by Oats's sophisticated pursuit of sexual relationships with minors. Moreover, unlike the district court in *Wolf Child*, the trial court here did give considerable weight to the impact that the probation conditions would have on Oats's relationship with his daughters. The court also explained why it was concerned, and it clarified the circumstances under which it would consider modifying the conditions in the future. Additionally, the time that Oats could be prohibited from contact with his daughters is much shorter than the 10-year prohibition in *Wolf Child*. And Oats could further decrease the time of his prohibition by engaging in therapy and seeking visitation approval in the family court.

Also, we are not persuaded by Oats's reliance on *Bauer*, *supra*, 211 Cal.App.3d 937. In that case, the defendant was convicted of false imprisonment and assault, and a condition of his probation required the

probation officer's approval of the defendant's choice of residence. (*Id.* at p. 940.) At 26 years old, the defendant still lived at home with his parents, and the only connection between his living arrangements and the offenses or his rehabilitation was the tenuous suggestion that the defendant was immature because his parents were overly protective. (*Id.* at p. 944.) Against this backdrop, the appellate court determined that the condition was unconstitutionally overbroad. (*Ibid.*) Here, by contrast, the evidence showed that Oats had pursued a sexual encounter with a 13-year-old girl and that he was also living with three girls under the age of 15. Because of those facts, the condition of probation that prohibits Oats from having contact with any females under the age of 18 (until further order of the court) directly operates to protect children and rehabilitate Oats.

Likewise, we do not believe that *People v. Beach* (1983) 147 Cal.App.3d 612 (*Beach*) compels a different result in the instant action. There, an elderly widow who was concerned about her neighborhood's decline and her own safety shot a man who had parked in her driveway and whom she perceived to be a threat. (*Id.* at pp. 618-619.) As a condition of probation, the court exiled the woman from her home and neighborhood, where she had lived for 24 years, out of concern for her own safety and repeat incidents. (*Id.* at pp. 619-620.) The appellate court held that the condition was unconstitutionally overbroad because in the 24 years in which the defendant had lived in the neighborhood, she had not been involved in any other acts of violence, and it was likely she would feel even less secure in a new and unfamiliar environment. (*Id.* at pp. 621-622.) The court also noted that other probation conditions were more narrowly tailored to address the same concerns, such as prohibiting the defendant's possession of dangerous

16

weapons and requiring her to participate in community service activities. (*Id*. at p. 623.)

Here, the same concerns that plagued the appellate court in *Beach* are not present. Unlike the defendant in *Beach*, Oats has not argued that he will feel less secure if prohibited from cohabitating with his minor daughters. Additionally, the record before us is clear that Oats poses a danger to female minors. The superior court provided a very detailed explanation why it was imposing probation condition 14, and, in doing so, specifically referenced the safety of Oats's female children. Oats points to no other, more narrowly tailored probation condition, that can achieve the same result. To the contrary, he argues that any condition that prohibits him from living with his female children is overbroad. Further, as the court explained, we are mindful that the record is unclear whether Oats's wife is in a position to supervise interactions between Oats and his daughters and protect the daughters as necessary. Thus, we agree with the People, there does not appear to be any other adequate, more narrowly tailored way to ensure the protection of Oats's children. And, in a nod to Oats's constitutional rights, the superior court explicitly stated that it would entertain alternatives if presented with additional evidence. On the record before us, we cannot say that probation condition 14 is constitutionally overbroad.

Oats also challenges probation condition 14 on the grounds that it is unauthorized under *Lent*, *supra*, 15 Cal.3d 481. We observe that it is not clear that Oats made any such objection below. In response to the superior court indicating that condition 14 "will also include no contact with any minor females under the age of 18 until further court order, which means [Oats] can't go live at home with his daughters under the age of 18 until after

17

this Court gives him permission . . ."[,] Oats's counsel made the following objection:

> "Your honor, I object to that condition. It's overbroad. There's no evidence in this particular case that my client's children are in any way affected at all. The detectives have had plenty of opportunity to interview my client's family. And it's basically going to force my client into a potentially homeless situation, and then we end up seeing, you know, people living on the streets and being stuck in a situation where they're not able to get off the streets, get a place to live, find a job."

Perhaps, Oats's counsel's reference to a lack of evidence that Oats's children are not "affected at all" implicitly raised a nexus challenge, thus implicating *Lent*, *supra*, 15 Cal.3d 481. The People do not argue that Oats forfeited his *Lent* challenge. As such, we will address Oats's claim on the merits.

When an offender accepts a probationary sentence, thereby avoiding incarceration, state law authorizes the sentencing court to impose conditions on such release as are "fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and . . . for the reformation and rehabilitation of the probationer." (§ 1203.1, subd. (j).) Accordingly, "[i]n granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety . . . ." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120 (*Carbajal*).) The broad discretion granted to trial courts to impose probation conditions "is not without limits," however; "a condition of probation must serve a purpose specified in the statute," and conditions regulating noncriminal conduct must be " 'reasonably related to the crime of which the defendant was convicted or to future criminality.' " (*Id.* at p. 1121.) Therefore, a condition of probation is generally "invalid [only

18

if] it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*Olguin*, *supra*, 45 Cal.4th at p. 379.) We review the reasonableness of a probation condition imposed by the trial court for an abuse of discretion. (*Ibid.*)

Oats argues that probation condition 14 is unreasonable under *Lent* because: (1) his relationship with his own children is unrelated to his offense of sending illicit material to a minor to seduce her; (2) having a relationship with one's own children is not criminal; and (3) "the record does not indicate more than a hypothetical relationship between the probation condition and future criminality." We reject these conditions.

As a threshold matter, we note that Oats ignores the blanket prohibition in probation condition 14 that he may not have any contact with any female minor. Rather, Oats presents condition 14 as a restriction on his ability to interact with his daughters only. In this sense, Oats characterizes this condition as if it specifically prohibits him from contacting his own children. It does not. Probation condition 14 limits his contact with all female minor children, a category that includes his minor daughters. The condition is not specifically aimed at Oats's daughters. Nor does it only apply to them.

Because probation condition 14 applies to all female minors, we evaluate its reasonableness under *Lent* in that context. Oats was convicted of sending sexual photos to a 13-year-old with the intent to seduce her. Prohibiting Oats from contacting female minors is directly related to that

19

offense. Moreover, the subject condition does not criminalize Oats for having a relationship with his own children. He must avoid contact with all female minors. However, the court specifically stated it could reconsider his contact with his own female children if he engages in certain therapy and/or receives an order from the family law court. Finally, probation condition 14 is reasonably related to future criminality because it helps to prevent Oats from establishing a similar relationship with any female minor in the future. (See *Lent*, *supra*, 15 Cal.3d at p. 486.)

In short, on the record before us, we certainly cannot say the superior court abused its discretion imposing probation condition 14. That condition is not arbitrary or capricious or does not otherwise exceed the bounds of reason under the circumstances presented. (See *Olguin*, *supra*, 45 Cal.4th at p. 384; *Carbajal*, *supra*, 10 Cal.4th at p. 1121.)

Finally, Oats maintains that probation condition 14 is unconstitutionally vague. He asserts that the condition needs a scienter requirement. The People, relying on *People v. Hall* (2017) 2 Cal.5th 494 (*Hall*), argue that the scienter requirement is to be presumed. We agree with the People.

Probation conditions are subject to the "void-for-vagueness doctrine." (*Hall*, *supra*, 2 Cal.5th at p. 500.) "This doctrine, which derives from the due process concept of fair warning, bars the government from enforcing a provision that 'forbids or requires the doing of an act in terms so vague' that people of 'common intelligence must necessarily guess at its meaning and differ as to its application.' [Citations.] To withstand a constitutional challenge on the ground of vagueness, a probation condition must be sufficiently definite to inform the probationer what conduct is required or prohibited, and to enable the court to determine whether the probationer has

20

violated the condition. [Citations.] In determining whether the condition is sufficiently definite, . . . a court is not limited to the condition's text. [Citation.] We must also consider other sources of applicable law [citation], including judicial construction of similar provisions. [Citations.] Thus, a probation condition should not be invalidated as unconstitutionally vague ' " 'if any reasonable and practical construction can be given to its language.' " ' " (*Id.* at p. 500-501.)

Applying these principles, the California Supreme Court concluded in *Hall*, *supra*, 2 Cal.5th 494 that probation conditions prohibiting the possession of firearms and illegal drugs were not void for vagueness despite their lack of an express scienter requirement. (*Id.* at pp. 501-504.) Looking beyond "the condition's text" to "other sources of applicable law" (*id.* at p. 500), the court construed the conditions in light of case law that (1) "articulates . . . a general presumption that a violation of a probation condition must be willful," (2) "specifically provides that probation conditions barring possession of contraband should be construed to require knowledge of its presence and its restricted nature" (*id.* at p. 501.), and (3) "construe[s] criminal statutes against the backdrop of the common law presumption that scienter is required and impl[ies] the requisite mental state, even where the statute is silent" (*ibid*). Because these sources were sufficient to inform a reasonable probationer that the conditions included a scienter requirement, the court concluded "no change to the substance of either condition would be wrought by adding the word 'knowingly.' " (*Id.* at p. 503.)

When the Supreme Court decided *Hall*, it dismissed review of *In re A.S.* (2016) 245 Cal.App.4th 758,[12] which presented the issue of whether no-

12    Review granted and opinion superseded July 31, 2014, review dismissed March 22, 2017, No. S220280.

21

contact probation conditions must be modified to explicitly include a scienter requirement. We infer from this dismissal that the Supreme Court intended that courts construe no-contact probation conditions in the same manner as conditions prohibiting the possession of contraband. Applying this approach, we conclude probation condition 14 is not void for vagueness. That condition implicitly contains a scienter requirement. Thus, probation condition 14 prohibits Oats from knowingly having "[c]ontact with any female minors under the age of 18."[13]

### D. Conditions 7(a) and 10(p)

Oats claims that probation conditions 7(a) and 10(p) are unconstitutionally overbroad and vague. The People concede that condition 10(p) is vague, but argue that neither condition is overbroad. Further, the People contend that condition 7(a) is not vague, and, additionally, Oats's challenge to that condition is not ripe. We agree with Oats as to these two conditions. Accordingly, we conclude that probation condition 7(a) is both overbroad and vague, and probation condition 10(p) is vague.

Probation condition 7(a) requires Oats to "[t]ake psychotropic medications if prescribed/ordered by doctor." Because Oats did not object to this condition below, we must limit our review to his facial challenge that the condition is vague and overbroad. (See *Sheena K.*, *supra*, 40 Cal.4th at p. 889.)

Probation condition 7(a) is unconstitutionally vague because it does not define the term "psychotropic," leaving Oats to guess what prescribed drug might fall under the psychotropic category. The People argue we should read

---

[13]    We note that the implicit scienter requirement in probation condition 14 is consistent with the explicit scienter requirements in the other no contact probation conditions, 10(k) and 10(i).

a scienter requirement into this condition. (See *Hall*, *supra*, 2 Cal.5th at p. 503.) Yet, even if we were to read probation condition 7(a) as requiring Oats to know that a prescribed drug is a psychotropic, we struggle to contemplate how he could do so. The People point out that the doctor is likely to inform Oats if a psychotropic medication is prescribed; however, this assumption does not change the fact that the condition does not require an explanation from a doctor or alter the lack of any definition of psychotropic in the condition itself.

Additionally, we agree with Oats that probation condition 7(a) is overbroad. The People claim this condition is "tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation." To this end, they insist the condition "only requires that [Oats] take psychotropic medication that a physician determines to be medically necessary for [Oat's] treatment." Yet, the People's assertion begs the question: treatment of what? The People imply that the condition is aimed at a doctor prescribing a drug to Oats as part of his treatment arising out of his underlying offense of pursuing a sexual encounter with a 13-year-old. But a simple reading of the plain text of probation condition 7(a) undermines the People's argument. There are no restrictions limiting this condition to treatment of Oats as it relates to his offense. Instead, the condition requires Oats to take psychotropic medications for any purpose, if ordered or prescribed by a physician, regardless of whether they are for a

23

mental disorder related to Oats's offense or to his reform and rehabilitation. Such a condition is a textbook example of overbreadth.[14]

Probation condition 10(p) fares no better than condition 7(a). Probation condition 10(p) does not allow Oats to "knowingly possess any pornographic material, including computer files and disks, or knowingly be in places where [he] know[s], or a P.O. or other law enforcement officer informs [him], that pornographic materials are the main item for sale." Oats argues this condition is overbroad and vague. The People disagree that the condition is overbroad, but concede that it is vague. Consequently, they offer additional language they contend addresses the vagueness. As we explain below, we determine that the People's suggested language does not remedy the vagueness problem before us.

The People acknowledge that the identification of pornography is inherently imprecise and subjective. (See *People v. Turner* (2007) 155 Cal.App.4th 1432, 1436 (*Turner*); *Pirali, supra*, 217 Cal.App.4th at p. 1353.) Thus, they propose a revision to probation condition 10(p) that is similar to modifications that have satisfied other appellate courts: Oats "shall not possess or view pornographic or sexually explicit material, having been informed by the probation officer that specified publications, websites, or other materials are pornographic or sexually explicit." (See *Turner*, at p. 1436; *Pirali*, at p. 1353.) In this sense, the People urge us to follow *Turner* and *Pirali* but do not explain why we should do so.

_____

14    Because we find probation condition 7(a) overbroad on these grounds, we do not reach Oats's argument that the condition also violates his right to privacy. Additionally, we summarily reject the People's argument that Oats's challenge to probation condition 7(a) is not ripe. The fact that Oats could challenge the condition after a doctor prescribes him psychotropic medicine that he does not wish to take does not cure the condition's constitutional ills.

The defendant in *Pirali*, who had been convicted of possessing child pornography, was barred by the conditions of his probation from possessing or purchasing " 'any pornographic or sexually explicit material as defined by the probation officer.' " (*Pirali, supra*, 217 Cal.App.4th at p. 1344.) He challenged this condition on the grounds that it was vague and lacked specificity, and that without an express knowledge requirement he would not know what the condition forbade. (*Id.* at p. 1352.) The appellate court agreed, explaining, "a probation condition ' "must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' [Citation.] Here, [the court found] the probation condition does not sufficiently provide defendant with advance knowledge of what is required of him. The fact that the probation officer may deem material sexually explicit or pornographic *after* defendant already possesses the material would produce a situation where defendant could violate his probation without adequate notice." (*Ibid*.) The court therefore modified the condition to state: " 'You're ordered not to purchase or possess any pornographic or sexually explicit material, having been informed by the probation officer that such items are pornographic or sexually explicit.' " (*Id.* at p. 1353.)

The appellate court in *Pirali* relied on *Turner, supra*, 155 Cal.App.4th 1432. In that case, the defendant exposed himself indecently to a three-year-old girl. (*Id.* at p. 1434.) One of his conditions of probation was that he " '[n]ot possess any sexually stimulating/oriented material deemed inappropriate by the probation officer and/or patronize any places where such material or entertainment is available.' " (*Ibid*.) The appellate court concluded this condition was unconstitutionally vague: "The phrase 'sexually stimulating/oriented material deemed inappropriate by the probation officer'

25

is an inherently imprecise and subjective standard." (*Id*. at p. 1436.)  The court modified the condition to read, " 'Not possess any sexually stimulating/oriented material having been informed by the probation officer that such material is inappropriate and/or patronize any places where such material or entertainment in the style of said material are known to be available.' " (*Ibid*.)  The court also concluded that, as modified, the condition was not overbroad because "[p]reventing the possession of sexually oriented materials by persons such as defendant promotes public safety and his rehabilitation." (*Id*. at p. 1437.)

In both *Pirali* and *Turner*, the respective courts were concerned with advance notice to the probationer.  In other words, how would the probationers know what material they were prohibited from possessing?  The two appellate courts provided similar answers:  The probation officer would determine what was prohibited and inform the probationers as such.  Thus, in *Pirali*, it was the probation officer who was to define pornography or sexually explicit material (see *Pirali*, *supra*, 217 Cal.App.4th at p. 1353), and, in *Turner*, the probation officer would define sexually stimulating/oriented material (see *Turner*, *supra*, 155 Cal.App.4th. at p. 1436.)  Therefore, neither case directly addressed what Oats argues here—the term "pornography" is unconstitutionally vague.

Unlike *Pirali* or *Turner*, a more recent appellate case addressed that very question.  *In re D.H.* (2016) 4 Cal.App.5th 722 (*D.H.*), in which the appellate court determined that the term " 'pornography,' " contained in a probation condition for a minor, was vague.  (*Id*. at p. 743.)  The appellate court in that case also observed that "*Pirali* and *Turner* provide little guidance . . . because both decisions were concerned with the lack of notice created by leaving the prohibited category's definition to the probation

officer." (*Id.* at p. 728.) In the instant action, Oats asks us to follow *D.H.* Surprisingly, the People do not discuss *D.H.* whatsoever in their respondent's brief.

In *D.H.*, a 16-year-old minor who admitted to indecent exposure on a public bus was placed on probation. (*D.H.*, *supra*, 4 Cal.App.5th at p. 724.) As a condition of probation, the minor was prohibited from accessing pornography. (*Id.* at p. 725.) The minor appealed, arguing the no-pornography condition was unconstitutionally vague. (*Id.* at pp. 727-728.) The appellate court agreed with the minor that the term " 'pornography' " was inherently vague and directed the trial court on remand "to define more precisely the material the court intends to prohibit." (*Id.* at p. 729.)[15] Although not faced with an overbreadth challenge, the court suggested the juvenile court carefully consider on remand "what purpose this condition is intended to serve, as it is far from clear to us how restricting D.H.'s access to *any* materials that might be considered pornographic will help him avoid the behavior he exhibited in committing his offense or aid more generally in his rehabilitation." (*Ibid.*)

We agree with the reasoning of *D.H.* Probation condition 10(p), as currently written, is unconstitutionally vague and must be stricken. (See *People v. Dominguez* (1967) 256 Cal.App.2d 623, 624, 629 [striking invalid condition of probation after defendant found to have violated it].) We are not satisfied that the People's proposed modification of the condition, based on the language of *Pirali*—that Oats "not possess or view any pornographic or

---

15    The court concluded the constitutional infirmity could not be remedied by requiring the probation officer to notify the minor in advance what materials would be considered pornographic because the term " 'pornography' " was itself subjective and capable of multiple interpretations. (*D.H.*, *supra*, 4 Cal.App.5th at pp. 728-729.)

sexually explicit material, having been informed by the probation officer that specified publications, websites, or other materials are pornographic or sexually explicit"—solves this problem. (See *Pirali*, *supra*, 217 Cal.App.4th at p. 1353.) There is a logistical difficulty with this approach: How could Oats get the probation officer's opinion on whether any particular material is pornographic without first viewing it and showing it to the officer? Even if this obstacle could be overcome, the more fundamental problem of the inherent vagueness of the term "pornography" remains.

Our conclusion here should not be read as a determination that a probation condition cannot prohibit a defendant's access to pornography or that pornography is incapable of a definition that passes constitutional muster. To the contrary, there are several avenues down which the superior court may travel to craft a constitutional condition. For example, the court could refer to "obscene material," as defined by title 15, section 3006, subdivision (c)(15) of the California Code of Regulations. Under that provision, "[o]bscene material" is defined as "material taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest; and is material which taken as a whole, depicts sexual conduct; and which, taken as a whole, lacks serious literary, artistic, political, or scientific value." (Cal. Code Regs., tit. 15, § 3006, subd. (c)(15)(A) [adopting standard set forth in *Miller v. California* (1973) 413 U.S. 15, 24]; see *Jenkins v. Georgia* (1974) 418 U.S. 153 ["nudity alone does not render material obscene under *Miller*'s standards"].) "Obscene material" may encompass visual depictions of anal or vaginal contact and nudity/sexual conduct involving a minor, but it excludes text-only material. (Cal. Code Regs., tit. 15, § 3006, subds. (c)(15)(C), (D).) Or perhaps, the superior court can use the phrase "sexually explicit" instead of pornography and then utilize

28

the definition of "sexually explicit conduct" under federal law, which defines such conduct as (1) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal; (2) bestiality; (3) masturbation; (4) sadistic or masochistic abuse; or (5) lascivious exhibition of the genitals, breast or pubic area. (18 U.S.C. § 2256.)

Although we have proposed some potential language that could make probation condition 10(b) less vague and we possess the authority to modify an unconstitutional probation condition on appeal (see *Sheena K.*, *supra*, 40 Cal.4th at p. 892), here, we believe the more prudent approach would be to remand the matter to the superior court and allow it to fashion a constitutional probation condition. On remand, we encourage the superior court to consider the scope of this probation condition and what purpose this condition is intended to serve. (See *D.H.*, *supra*, 4 Cal.App.5th at p. 729.) Although Oats was convicted of a sex crime, his crime was aimed at seducing a 13-year-old minor. Further, material found on his phone implicated that Oats is interested in sexual interactions with underage females. As such, the superior court can fashion a probation condition to more directly relate to Oats's offense and predilections while aiding in his rehabilitation.[16]

### E. Condition 6(k)

Oats contends that condition 6(k), which states that he shall "[p]rovide true name, address, and date of birth if contacted by law enforcement" and

---

[16] Oats also challenges probation condition 10(p) on the grounds it is overbroad. In doing so, he argues that his First Amendment right to free speech includes the right to view sexually oriented materials. (See *United States v. Playboy Entm't Group* (2000) 529 U.S. 803, 810.) We do not address the overbreadth challenge here because we determined the subject condition is vague and provide the superior court the opportunity to revise the condition. In doing so, we anticipate the superior court will ensure the revised condition in narrowly tailored.

"[r]eport contact or arrest in writing to the [probation officer] within 7 days," including "the date of contact/arrest, charges, if any, and the name of the law enforcement agency," is unconstitutionally vague.

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' [Citation.] The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions. (U.S. Const., Amends. V, XIV; Cal. Const., art. I, § 7).' " (*Sheena K., supra,* 40 Cal.4th at p. 890.) "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*Ibid.*) Probation conditions are given " ' "the meaning that would appear to a reasonable, objective reader." ' " (*In re I.V.* (2017) 11 Cal.App.5th 249, 261.) The mere fact that there " ' " 'may be difficulty in determining whether some marginal or hypothetical act is covered by [a condition's] language' " ' " does not render the condition "impermissibly vague." (*Id.* at p. 261.)

Oats relies on *People v. Relkin* (2016) 6 Cal.App.5th 1188 (*Relkin*), to support his argument that the portion of this condition requiring that he report any "contact" with law enforcement is unconstitutionally vague. The court in *Relkin* considered a probation condition that required the defendant "to 'report to the probation officer, no later than the next working day, any arrests or any contacts with or incidents involving any peace officer.' " (*Id.* at p. 1196.) The court concluded that "the portion of the condition requiring that defendant report 'any contacts with . . . any peace officer' " was vague because it "does indeed leave one to guess what sorts of events and

interactions qualify as reportable." (*Id*. at p. 1197.) According to the court, it was not certain that the condition would not be triggered "when defendant says 'hello' to a police officer or attends an event at which police officers are present, but would be triggered if defendant were interviewed as a witness to a crime or if his 'lifestyle were such that he is present when criminal activity occurs.'" (*Ibid*.) "The language does not delineate between such occurrences and thus casts an excessively broad net over what would otherwise be activity not worthy of reporting." (*Ibid*.)

In contrast to the condition at issue in *Relkin*, condition 6(k)'s requirement that Oats "[p]rovide [his] true name, address, and date of birth if contacted by law enforcement" would appear to a reasonable, objective reader to refer to contacts initiated by a law enforcement officer in which the officer requests that information from Oats. This would not include mere greetings by law enforcement officers or conversations with officers at events Oats may attend. Further, the requirement that Oats report the "contact or arrest" and that he include the "name of the law enforcement agency" indicates that the interaction must be of a type and nature that either the law enforcement officer would have supplied this information to Oats, or Oats would have been made aware of this information because the nature of the "contact" was sufficiently substantive. This, too, indicates that a reasonable reading of the condition sufficiently delineates between a casual, random interaction between Oats and a law enforcement officer, including the exchanging of pleasantries, and a situation in which Oats is a witness to a crime or is specifically stopped and questioned by a law enforcement officer. We therefore reject Oats's vagueness challenge to condition 6(k).

31

F.  Conditions 6(r) and 7(b)

Oats relies on *People v. Cervantes* (1984) 154 Cal.App.3d 353 (*Cervantes*) to argue that conditions 6(r) and 7(b) "are void because they delegate to the probation officer the judicial power to determine the kinds of tests, counseling, treatment, and conduct to which Mr. Oats must participate."  Additionally, Oats contends these conditions represent "[a]n unlawful delegation of judicial power to the probation officer . . . [that] violates the doctrine of separation of powers . . . ."

Again, condition 6(r) requires that Oats "[p]articipate and comply with any assessment program if directed by the P.O."  Condition 7(b) requires that Oats "[p]articipate in treatment, therapy, counseling, or other courses of conduct as suggested by validated assessment tests."

Oats argues that probation condition 6(r) "unlawfully delegates to the probation officer the court's authority to determine the types of assessment tests in which Mr. Oats must participate."  Oats objects that condition 7(b) "unlawfully delegates to the probation officer the court's authority to determine the types of treatment, counseling, and other conduct in which Mr. Oats must participate."  Further, Oats contends these two probation conditions would allow the probation officer to engage in such mischief as requiring him to take an eye exam and then purchase and wear glasses or take the Scholastic Aptitude Test and enroll in an algebra course.  Oats warns that under conditions 6(r) and 7(b), the probation officer is granted "unfettered discretion to select any assessment test whatsoever" and "require Mr. Oats to take the test, and then to direct Mr. Oats to take any remedial measures suggested by the test."  As such, Oats insists these conditions allow the probation officer to usurp the judicial function of determining the terms and conditions of probation.

32

We reiterate that Oats did not object to either of these two conditions on the ground that they improperly delegate judicial authority at the time the trial court imposed them. Challenges to probation conditions are typically forfeited if not raised when they are imposed (*Welch*, *supra*, 5 Cal.4th at pp. 234-235), with a narrow exception that a court may exercise its discretion to consider such challenges if they are constitutional challenges presenting pure questions of law (*Sheena K.*, *supra*, 40 Cal.4th at p. 885). However, merely couching an objection as a constitutional challenge is not sufficient to avoid forfeiture. Not " 'all constitutional defects in conditions of probation may be raised for the first time on appeal, since there may be circumstances that do not present "pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court." [Citation.] In those circumstances, "[t]raditional objection and waiver principles encourage development of the record and a proper exercise of discretion in the trial court." [Citation.]' [Citation.] . . . [T]he probationer should object to a perceived facial constitutional flaw at the time a probation condition initially is imposed in order to permit the trial court to consider, and if appropriate in the exercise of its informed judgment, to effect a correction.' " (*Ibid.*)

To the extent Oats had any concerns about the court delegating to the probation officer the authority to direct him to comply with any of these conditions, Oats could have, and should have, objected and asked the trial court to address those concerns at the time the conditions were imposed.

Instead, he accepted these conditions to avoid imprisonment.[17]  In accepting the terms of probation without raising any objection that would have allowed the trial court to address these concerns, Oats prevented the trial court from being able to more narrowly draw the conditions.  Indeed, the court could have had legitimate reasons for leaving some of the conditions open-ended in Oats's case, and could have stated those reasons on the record if Oats had raised an objection at the time the conditions were imposed.  Specifically, the court could have related its discretionary choices to Oats's needs as a probationer.  The purpose of the forfeiture rule is to avoid precisely the situation that we have here, where an objection would have permitted the trial court to address these concerns and/or make a better record to support the court's decisions; the forfeiture rule exists to encourage parties to bring errors to the attention of the trial court so they may be immediately corrected.  (*Sheena K.*, *supra,* 40 Cal.4th at p. 881.)  We conclude that Oats

---

[17]    Probation is not an inherent right; it is an act of leniency (*Wardlow,* *supra,* 227 Cal.App.3d at p. 365), the purpose of which is to serve as a "period of genuine rehabilitation" (*Griffin v. Wis.*, *supra,* 483 U.S. at p. 875). Probationers may consent to limit their constitutional rights in preference to incarceration; on the flip side, if a condition appears too onerous, a defendant may choose to serve the prison sentence instead.  (*Olguin*, *supra,* 45 Cal.4th at p. 379.)

34

has forfeited his contentions, and we see no reason to exercise our inherent discretion to consider them despite the forfeiture.[18]

## G. Probation Conditions 15, 16, and 17

Oats's final argument is that the written order granting formal probation does not accurately reflect that the superior court declared during the sentencing hearing that probation conditions 15, 16, and 17 were to be stayed. The People agree that the order should be corrected to reflect that condition 17 is to be stayed, but note that the order already provides that conditions 15 and 16 will be stayed.

Below, the superior court ordered that probation conditions 15, 16, and 17 be stayed pending Oats's successful completion of probation. The

---

[18] We also question the validity of Oats's contentions on the merits. Oats relies primarily on *Cervantes* in support of his contentions that a number of conditions improperly delegate to the probation officer the court's authority to set the conditions of probation. However, *Cervantes* involved the delegation of the calculation of restitution; but the calculation of restitution is specifically reserved for the court, pursuant to statute. (*Cervantes*, *supra*, 154 Cal.App.3d at p. 356.) *Cervantes* does not stand for the proposition that a court may never delegate to the probation officer some decision-making authority with regard to the precise implementation of probation conditions. Leaving certain day-to-day decision-making to a probation officer often makes sense and is necessary, in fact, because the "trial court is poorly equipped to micromanage" the selection of programs or tools that assist a probationer in his or her rehabilitation. (*People v. Penoli* (1996) 46 Cal.App.4th 298, 308.) Further, it seems apparent that under the terms of the challenged conditions, the court effectively authorized the conditions but permitted the probation officer to determine whether to implement them, depending on Oats's performance on probation, thereby placing Oats in a better position than he would have been if the court had simply imposed the conditions without allowing the probation officer to determine that such conditions were not in fact necessary for the effective supervision of Oats. Essentially, the court has determined that Oats may be subjected to these conditions, and that they should be imposed. However, Oats may avoid having the conditions applied to him if he successfully performs on probation without them.

court's written order granting Oats formal probation states that probation conditions 15 and 16 are stayed pending successful completion of probation, but is silent as to condition 17. A court's oral judgment controls when there is an inconsistency between that and the written documents, such as minutes and abstracts of judgment, purporting to summarize the court's order, and appellate courts may correct such clerical errors. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Accordingly, on remand, we order the superior court to ensure the order granting formal probation accurately states that probation condition 17 is stayed pending Oats's successful completion of probation.

## DISPOSITION

We remand this matter to the superior court to modify probation conditions 7(a) and 10(p). In addition, the superior court is to ensure that the amended order granting probation accurately reflects that probation condition 17 is stayed pending Oats's successful completion of probation. In all other respects, the judgment is affirmed.


HUFFMAN, J.

WE CONCUR:



McCONNELL, P. J.



BENKE, J.